UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
NATIONWIDE SALES AND SERVICES INC.
and IMIG, INC.                                              **MEMORANDUM & ORDER**

                Plaintiffs,

        v.                                              Civil Action No. 16-6617 (GRB)


ENVIROCARE TECHNOLOGIES
INTERNATIONAL, LTD. and
ENVIROCARE TECHNOLOGIES, LLC.

                Defendants.
----------------------------------------------------------------X
NATIONWIDE SALES AND SERVICES INC.,
and IMIG, INC.


                Plaintiffs,

        v.                                              Civil Action No. 16-6223 (DRH)(GRB)


STEEL CITY VACUUM COMPANY
d/b/a Steel City Vacuum Company Inc.

                Defendant.
----------------------------------------------------------------X

      In these actions, plaintiffs Nationwide Sales and Services, Inc. and Imig, Inc. have brought claims against defendants Envirocare Technologies International, Ltd. and Envirocare Technologies, LLC (together "Envirocare") and Steel City Vacuum Company based on the importation and sale of certain vacuum cleaner components.[1] Presently before the undersigned in each action are motions for summary judgment filed by defendants. In both actions, defendants seek entry of summary judgment based on plaintiffs' failure to supply patent claim

---

[1] In a third companion action, plaintiffs have filed claims against the manufacturer purportedly involved in the alleged violations. *Imig v. Omi*, 16-CV-628 (GRB).

charts, identification of trade secrets, and proof to support the claims.[2] For the reasons set forth below, in the *Envirocare* action, the motion for summary judgment is granted in part and denied in part. In the *Steel City* matter, summary judgment is granted in all respects.

**BACKGROUND**

1. *The* **Envirocare** *Action*

    a. *Procedural History*

On November 30, 2016, plaintiffs commenced this action and, on January 27, 2017, filed an amended complaint alleging that Envirocare acquired and sold vacuum cleaner parts made with plaintiffs' trade secrets and patented technology, and asserting the following claims: patent infringement, violation of the Federal Defend Trade Secrets Act of 2016, conversion and tortious interference with contractual and business relations. More particularly, plaintiffs allege that four hose assembly parts acquired by Envirocare from a Chinese national named Xu Shihui and Chinese companies he purportedly operates, identified as Omi and Startrade (collectively "Shihui"), and sold to Steel City for resale, including parts covered by plaintiffs' patents numbered 7,159,270 ("'270 Patent") and 7,168,127 ("'127 Patent").

In paragraph 17 of the amended complaint, plaintiffs define their trade secrets as follows:

> specifications and formulas for materials to be used for products of the Plaintiffs Nationwide and Imig, the specifications for the manufacture of products to provide proper tolerances as required by Nationwide and Imig, and the know how to manufacture such products and parts to the standards required by Nationwide and Imig; the formulas for the synthetic plastic materials for the fans used in their motors; and trade secrets regarding the engineering and

---

[2] In the *Envirocare* action, the parties have consented to the jurisdiction of the undersigned for all purposes, while in the *Steel City* action, the parties consented to the jurisdiction of the undersigned for the resolution of the instant dispositive motion. Hence, this decision has been issued as an order.

design of components used in the production of motors to prevent
over-heating.

The amended complaint identifies more than twenty vacuum cleaner parts manufactured by Shihui using tooling and trade secrets of plaintiffs, which Envirocare allegedly purchased and sold to Steel City.

Pursuant to the Court's discovery plan, the parties were directed to complete certain discovery, after which defendants could move for summary judgment. As part of that initial phase of discovery, plaintiffs subpoenaed third-party Import Commodity Group Ltd. ("ICGL") seeking documents relating to Envirocare's importation of vacuum cleaner parts. Plaintiffs were required to respond to a contention interrogatory requiring them to "identify all products imported into the United States, offered for sale or sold by defendants which plaintiffs claim were manufactured by Shihui using the trade secrets, proprietary tooling and molds, or other intellectual property of plaintiffs." Plaintiffs responded by referring to their 900-page document production, largely consisting of public patent filings. The remainder does not identify with particularity any trade secrets allegedly disclosed to Envirocare or used by Envirocare.

  b. *Undisputed Material Facts*

Based upon the submissions of the parties, the following material facts are either undisputed or have been ineffectively disputed by the parties:

For more than 16 years, Envirocare has operated primarily as a purveyor of vacuum cleaner bags and filters from its headquarters in Bohemia, New York. Since approximately 2002, Envirocare has purchased vacuum cleaner parts from Shihui.

Plaintiffs' infringement contentions, required under the Court's discovery plan, identified eight vacuum cleaner parts as infringing every claim of the '127 and '270 patents.[3] Envirocare moved to compel plaintiffs to comply with the required production of patent infringement claim charts and identify any allegedly infringing or misappropriated vacuum cleaner parts. At a June 15, 2017 court conference, the parties argued Envirocare's motion to compel. At that conference, plaintiffs' counsel repeatedly represented that his clients needed to obtain documents from third-party customs brokers to identify fully the alleged infringement. The following colloquy with the Court demonstrates the perceived significance of the customs information:

> THE COURT: [I]f it comes up a negative for you, meaning the [customs documents] are empty, what do we do next?
>
> MR. DUNNE: I have to talk to my clients, obviously. But it looks like we have to withdraw the case.

As a result, the Court permitted plaintiffs to obtain third-party discovery of the customs brokers, prior to the resolution of the pending motions or the filing of dispositive motions.

On June 16, 2017, counsel for plaintiffs informed Envirocare's counsel that he could not identify the allegedly offending products using the part numbers and descriptions Envirocare had provided, and requested that Envirocare send plaintiffs photographs of each of the parts listed on the Envirocare Parts List. Envirocare supplied plaintiffs' counsel with photographs of certain components. Subsequently, plaintiffs subpoenaed records from two customs brokers, ICGL and K-Line, which resulted in the production of more than 3,000 pages of customs records to plaintiffs. Furthermore, plaintiffs took the deposition of the representative of one of the customs

---

[3] Those components are identified by Steel City part nos.: (i) 001 26-1141-19; (ii) 002 26-1159-21; (iii) 001 26-1142-07; (iv) 002 26-1160-04; (v) 015 26-1333-01; (vi) 016 26-1336-01; (vii) 017 26-1334-05 and (viii) 018 26-1337-02.

4

brokers on November 15, 2017. Plaintiffs have not filed any motion seeking further compliance by the customs brokers.

After review of this information, on the question of alleged trade secret misuse, counsel for plaintiffs contended that "the items m34 and m37 were made partially with tooling of Nationwide and Imig; as well as the 18/3 50' grey cord." No further detail was supplied. However, as discussed further herein, Envirocare submitted evidence supporting the notion that the m34 and m37 components are made with plaintiffs' tooling. To date, plaintiffs have failed to produce any patent infringement charts as directed by the Court.

### 2. *The* Steel City *Action*

#### a. *Procedural History*

On November 9, 2016, plaintiffs filed a parallel action against Steel City, alleging acquisition and sale of unspecific vacuum products made with "confidential and trade secret information and proprietary tooling" owned by plaintiffs and asserting claims of patent infringement, violation of the Federal Defend Trade Secrets Act of 2016, tortious interference with contract and business relationships and conversion. Plaintiffs alleged that Shihui sold these unspecified products to plaintiffs prior to the filing of the action. Shortly thereafter, plaintiffs filed an amended complaint, which did not further identify the offending products.

On January 13, 2017, counsel for Steel City sought to schedule a motion to dismiss. In response, plaintiffs' counsel sought to file a second amended complaint to "address matters raised by Defendant" and avoid the need for a motion to dismiss the first amended complaint. Plaintiffs filed a second amended complaint, which identified, by specific Steel City part number, fourteen components allegedly purchased from Shihui that incorporated plaintiffs' trade

5

secrets and patented technology.[4]  Additionally, the second amended complaint alleges that certain "replacement motors" similarly infringed plaintiffs' rights, but failed to specify any part numbers associated with those motors.

In May 2017, counsel for defendants moved for an order to compel plaintiffs to specifically identify the vacuum cleaner parts plaintiffs allege have been imported by defendants and are the subject of this action, and to provide the required claim charts.  DE 25.  Counsel for plaintiffs responded that a subpoena had been served upon defendants' customs broker seeking importation records.  DE 26.  Attached to that response were certain documents obtained from an online source indicating vacuum cleaner parts had been imported by Envirocare and some of these shipments had been directed to Steel City.  Counsel indicated that the customs documents available from the online service did not include packing lists, invoices, bill of lading and the like that would identify the actual items being imported.  These documents pertained to thirteen shipments of vacuum cleaner parts identifying Envirocare Technologies International as "consignee" and in some cases as "shipper" with the same address as Shihui.

At the above-referenced conference on June 15, 2017, the Court directed that all customs documents required in the subpoena be produced.  During that conference, the Court permitted plaintiffs to obtain such third-party discovery and ordered plaintiffs (1) to identify the infringing parts and parts manufactured using plaintiffs' trade secrets imported by defendants as listed on the Envirocare Parts List and (2) produce patent infringement claim charts by July 31, 2017.  The

---

[4] These included part nos. 26-1141-19; 26-1142-07; 26-1159-21; 26-1160-04, 14-1600-05; 14-1510-06; 14-1420-07; 14-0012-09; 14-1605-01; 14-1020-21; 14-1400-22; 14-1810-02; 14-1802-61; 14-1903-03; 14-1702-05.  Second Amended Complaint, ¶¶ 22-26.

deposition of the customs broker was taken on November 15, 2017 and approximately 2,700 customs documents were produced.

### b. *Undisputed Material Facts*

For more than seventy years, Steel City has operated as a distributor of vacuum cleaners and parts from its headquarters in Mount Pleasant, Pennsylvania. Steel City does business with vacuum dealers and customers across the nation and maintains an inventory of over 13,000 vacuum products. Steel City maintains sales relationships with a number of domestic and foreign manufacturers, brokers and other sources of vacuum products, including plaintiffs.

In approximately 2005 or 2006, Steel City began purchasing components from plaintiffs for commercial vacuum systems. Because plaintiffs also sold these vacuum products to vacuum product dealers and end-users, plaintiffs directly competed against Steel City for such sales. Steel City continued to order such products from plaintiffs until the fall of 2016, when plaintiffs stopped fulfilling open orders from Steel City and ultimately brought this litigation against Steel City on November 9, 2016. Another source of vacuum products for Steel City is Shihui. Through Shihui, Steel City has purchased vacuum products from Chinese manufacturing firms since approximately 2005.

Steel City produced 589 pages of documents confirming purchases from Nationwide from 2014 through 2016, including Steel City purchase orders, Nationwide invoices and Nationwide packing slips. Additionally, plaintiffs subpoenaed third-party ICGL seeking "documents pertaining to the importation into the United States subsequent [sic] January 1, 2014 of vacuum cleaner parts involving Envirocare Technologies International, Ltd. or Envirocare Technologies, LLC, or any related company under common ownership and control."

On August 18, 2017, ICGL produced to plaintiffs and Steel City 240 pages of customs records reflecting Steel City purchases of vacuum products from Shihui. These customs records include the unredacted invoices for vacuum products purchased by Steel City from Mr. Shihui for dates of entry from 2014 through 2016. None of the products identified in the second amended complaint appear on the invoices produced by ICGL. Instead, plaintiffs' own invoices for purchases by Steel City from plaintiffs during this same period reflect purchases of all of these products. In fact, it is undisputed that, from 2014 until litigation commenced, Steel City purchased at least the following number of the products identified below from plaintiffs rather than Shihui, under the listed number or any other product number:

| Product Number | Product Description | Units Purchased from Plaintiffs | Units Purchased from Shihui |
|---|---|---|---|
| 14-1600-05 | dust brush, metal | 12 | 0 |
| 14-1510-06 | 14in floor brush | 3,170 | 0 |
| 14-0012-09 | paddle tool | 60 | 0 |
| 14-1605-01 | dust brush, plastic | 2,160 | 0 |
| 14-1020-21 | 14in squeegee | 100 | 0 |
| 14-1400-22 | carpet tool | 2,870 | 0 |
| 14-1810-02 | 15in crevice tool, metal | 10 | 0 |
| 14-1802-61 | 14.5in crevice tool, plastic | 819 | 0 |
| 14-1903-03 | 2-piece S-type wand, metal | 260 | 0 |
| 14-1702-05 | upholstery tool | 480 | 0 |

| 26-1141-19 | Hose Assem. Grey Lux Super J w/Weivel (OEM Grade) | 4,680 | 0 |
| 26-1142-07 | Hose Assemble, White Lux Super J W/Swivel | 1,524 | 0 |
| 26-1159-21 | Hose Assemble, Grey Lux 2100 W/Swivel | 2,621 | 0 |
| 26-1160-04 | Hose Assemble, White Lux 2100 W/Swivel | 915 | 0 |

At the June 15, 2017, status conference before the Court, Steel City presented undisputed evidence, based on Nationwide's own invoices to Steel City, that the subject products were directly sold by plaintiffs to Steel City prior to the litigation, and were not purchased from Shihui during that same period. On July 28, 2017, Steel City served a Rule 11 Notification to plaintiffs and requested that plaintiffs voluntarily withdraw their claims based on the evidence presented at the June 15, 2017 conference and subsequently produced to plaintiffs on June 23, 2017.

On July 31, 2017, Steel City filed its July 31, 2017 Status Report, which confirmed that a sample of the customs records requested by plaintiffs from Steel City did not reflect any Steel City purchases of the Accused Products from Shihui. On September 1, 2017, Steel City filed a Letter Motion to Compel Compliance with the June 15 Order, which requested that plaintiffs confirm whether the accused products appear on the customs records produced by ICGL. Plaintiffs had not presented any evidence that Steel City purchased any of the subject products from Shihui prior to the litigation.

**DISCUSSION**

*1. Standard of Review*

The Court considers these motions for summary judgment under the oft-repeated and well-understood standard for review of such matters, as discussed in *Bartels v. Inc. Vill. of Lloyd Harbor*, 97 F. Supp. 3d 198, 211 (E.D.N.Y. 2015), *aff'd sub nom.*, *Bartels v. Schwarz*, 643 F. App'x 54 (2d Cir. 2016), which discussion is incorporated by reference herein. Furthermore, as this Court has previously held:

> To oppose a motion for summary judgment, though, a party is required by the Court's Local Rules to submit a Statement of Material Facts upon which it contends there "exists a genuine issue to be tried" and "each statement controverting any statement of material fact ... must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." L. Civ. R. 56(d); *Tuccio v. FJC Sec. Servs., Inc.*, No. CV 12-5506(JFB)(GRB), 2014 WL 4438084, at *5 (E.D.N.Y. Aug. 18, 2014), *adopted by*, 2014 WL 4438469 (E.D.N.Y. Sept. 8, 2014), *appeal dismissed*, (2d Cir. Mar. 18, 2015). A party may not rest on a mere denial without citing supporting admissible evidence. "Merely denying certain statements in the moving party's statement of undisputed material facts without stating the factual basis for such denial and without disclosing where in the record is the evidence relied upon in making such denial does not constitute a 'separate, short, and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried'— as is required to controvert the moving party's statement of undisputed material facts." *Covelli v. Nat'l Fuel Gas Distrib. Corp.,* No. 99-cv-0500E(M), 2001 WL 1823584, at *1 (W.D.N.Y. Dec. 6, 2001) (citing *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001)), *aff'd*, *Covelli v. Nat'l Gas Distrib. Corp.*, 49 F. App'x 356 (2d Cir. 2002).
>
> Upon the failure to properly controvert a movant's statement of material fact, such statement "will be deemed admitted for the purposes of the motion." L. Civ. R. 56.1(c); *D.N. ex rel. D.N. v. Bd. of Educ. of Ctr. Moriches Union Free Sch. Dist.*, No. CV 14-99(GRB), 2015 WL 5822226, at *3 n.3 (E.D.N.Y. Sept. 28, 2015); *see also Edmonds v. Seavey*, No. 08 CIV. 5646 (HB), 2009 WL 2949757, at *1 n.2 (S.D.N.Y. Sept. 15, 2009), *aff'd*, 379 F. App'x 62 (2d Cir. 2010); *AFL Fresh & Frozen Fruits & Vegetables, Inc. v. De-Mar Food Servs. Inc.*, No. 06 Civ. 2142(GEL), 2007 WL 4302514, at *5 (S.D.N.Y. Dec. 7, 2007). At the same time, of course, district courts have "broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz*, 258 F.3d at 73. And the Court may not rely solely upon the failure to controvert assertions made in a Rule 56.1 statement if those assertions are not supported in the record. *See Giannullo v.*

> *City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) ("[E]ven though plaintiff's Rule 56.1 counter-statement failed to specifically controvert these assertions, the unsupported assertions must nonetheless be disregarded and the record independently reviewed."); *compare Jackson v. Fed. Express*, 766 F.3d 189, 196 (2d Cir. 2014) (distinguishing *Giannullo* and upholding default where "each statement of proposed undisputed facts was supported by a citation to the record sufficient to prove each such fact").

*Gervis v. Target Corp.*, No. CV 16-380 (GRB), 2017 WL 3669009, at *2 (E.D.N.Y. July 20, 2017). Thus, by way of example, in many instances, the parties responded to Rule 56.1 assertions by claiming that the posited fact was irrelevant. Such bald claims may, after appropriate review, result in the admission of the asserted fact.

### 2. *Failure to Provide Claim Charts in Support of Patent Claims*

This Court has enacted Local Patent Rules that "apply to patent infringement, validity and unenforceability actions and proceedings," such as the cases at bar. Local Patent Rule 1. Those rules require certain disclosures to ensure fair notice and reasonable management of patent cases—the litigation of which can be costly and difficult. In furtherance of these principles, the Local Patent Rules require that:

> a party claiming patent infringement must serve on all parties a "Disclosure of Asserted Claims and Infringement Contentions," which identifies for each opposing party, each claim of each patent-in-suit that is allegedly infringed and each product or process of each opposing party of which the party claiming infringement is aware that allegedly infringes each identified claim.

Local Patent Rule 6. Frequently referred to as "claim charts," such disclosures are commonly required by courts in such cases. "The requirement 'to disclose where each element of each infringed claim is found within the accused device . . . is typical in patent litigation as its purpose is to put a defendant on notice of all contentions regarding how each claim limitation is allegedly met by the accused device.'" *Canvs Corp. v. United States*, 107 Fed. Cl. 100, 103 (2012) (quoting *Iris Corp. Berhard v. United States*, 84 Fed. Cl. 12, 16 (2008)). Many jurisdictions

11

require the production of preliminary claim charts before discovery in the case. *See, e.g.*, *McZeal v. Sprint Nextel Corp.*, 335 F. App'x 966, 969 (Fed. Cir. 2009) ("[R]equiring a preliminary claim chart before discovery is not an abuse of discretion and is routinely required in many jurisdictions.") (collecting rules).

Customizing the requirements of the Local Patent Rules to the contours of the instant case, on March 29, 2017, the Court executed a stipulated discovery schedule prepared and negotiated by and between the parties calling for the production of infringement contentions and claim charts by May 15, 2017. DE 20. Plaintiffs' failure to comply led to the filing of a motion to compel by defendants, which motion was addressed at the June 15 conference. By the time of the conference, however, the charts had still not been produced. Plaintiffs' counsel conceded that defense counsel "needs the claim chart. I agree that that's reasonable." Tr. at 44. Defense counsel raised the following argument:

> He didn't have a basis for a claim chart before filing the complaint. They had to have a good faith basis that each element, each element of the accused product infringes their patent. That's all we want. I mean, that's what he's asked for.

Tr. at 45. Despite the validity of this point, the Court allowed plaintiffs additional time to provide patent claim charts. Rather than impose an arbitrary date, the Court asked plaintiffs' counsel to suggest a date; counsel agreed to provide claim charts by July 2017. By the time of the filing of the instant motions many months later, plaintiffs' counsel still had not provided claim charts. Thus, in this case, "[p]laintiff[s] [have] been given every opportunity, and then some, to provide . . . an element-by-element analysis of the claim limitation." *Rates Tech. Inc. v. Mediatrix Telcom, Inc.*, No. CV 05-2755(JS)(AKT), 2008 WL 8443501, at *17 (E.D.N.Y. Mar. 31, 2008), *supplemented by*, 2008 WL 8443564 (E.D.N.Y. Sept. 2, 2008).

The failure to provide a claim chart can provide the basis for dismissal for failure to prosecute. *Id.* The Federal Circuit has held that "unlike the liberal policy for amending pleadings, the philosophy behind amending claim charts . . . is decidedly conservative and designed to prevent the 'shifting sands' approach to claim construction." *Genentech, Inc. v. Amgen, Inc.*, 289 F.3d 761, 774 (Fed. Cir. 2002) (internal quotation marks omitted) (quoting *Atmel Corp. v. Info. Storage Devices, Inc.*, No. C 95-1987, 1998 WL 775115, at *2 (N.D. Cal. Nov. 5, 1998)). Further, the Federal Circuit "defers to the district court when interpreting and enforcing local rules so as not to frustrate local attempts to manage patent cases according to prescribed guidelines." *Id.*

Most of the cases in this area discuss the adequacy of the claim charts submitted, or the extent that claim charts may be amended to include new theories. *See, e.g.*, *Canvs Corp.*, 107 Fed. Cl. at 103. This case represents the rare situation in which plaintiffs' counsel has simply failed or refused to submit claim charts, notwithstanding the requisites of the Local Patent Rules, stipulated court orders and a court directive issued in response to a motion to compel. Furthermore, as is plain in the record, plaintiffs' counsel well knew that dispositive motion practice would follow.

As my colleague Judge Tomlinson has held:

> What Plaintiff was ordered to do repeatedly was to provide fundamental information basic to any patent infringement action, namely, Plaintiff's theory of liability, broken down in the necessary element-by-element analysis of the claim limitation. Whether Plaintiff cannot or will not do so at this juncture is an academic exercise—Plaintiff has not done so, nearly three years into this litigation. Such conduct cannot continue to be countenanced.

*Mediatrix Telcom, Inc.*, 2008 WL 8443501, at *21 (recommending dismissal as sanction). In addition to the procedural failings, the failure or refusal to provide claim charts underscores

plaintiffs' inadequate allegations of patent infringement. Thus, the motions for summary judgment are granted as to the patent claims.

### 3. *The Trade Secret Claims*

Defendants seek summary judgment regarding plaintiffs' claims of trade secret misappropriation under New York state law and claims under the Defend Trade Secrets Act of 2016, which creates a concomitant federal cause of action. As a threshold matter, despite many months of litigation and discovery, plaintiffs have identified only three components that arguably fall within the ambit of their trade secret claims—Envirocare Part Nos. m34, m37 and the 18/3 50' grey cord, claiming that said components had been fabricated, in whole or part, with "tooling" owned by plaintiffs. Because plaintiffs have been given ample opportunity to identify other components allegedly sold in violation of their rights and have failed to do so,[5] the remaining claims are construed to only apply to these three components and defendants are granted summary judgment as to all other accused products.

First, defendants argue that plaintiffs have failed to identify such trade secrets with particularity as required under case law and the rules and rulings of this Court. The Federal Circuit, applying Second Circuit case law in the context of summary judgment, has urged the exercise of caution before a district court imposes the extreme sanction of dismissal based on a failure to adequately identify trade secrets. *TNS Media Research, LLC v. Tivo Research & Analytics, Inc.*, 629 F. App'x 916, 929 (Fed. Cir. 2015) ("[T]he district court abused its discretion when it dismissed all of TRA's trade secrets claims as a discovery sanction."). In applying New York law, the Second Circuit has held:

---

[5] As indicated above, in certain instances, Steel City has established beyond peradventure that the accused products were, during the relevant times, purchased from plaintiffs and therefore cannot form the basis of a suit.

14

> "To succeed on a claim for the misappropriation of trade secrets under New York law, a party must demonstrate: (1) that it possessed a trade secret, and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means." *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 43–44 (2d Cir.1999) (applying New York law). "A trade secret is any formula, pattern, device or compilation of information which is used in one's business, and which gives the owner an opportunity to obtain an advantage over competitors who do not know or use it." *Id*. at 44.

*Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 117 (2d Cir. 2009). Here, the plaintiffs' allegations that the three accused components were made with their "tooling" falls well within these parameters, and plaintiffs have alleged (though disputed by defendants) that the products made by Shihui incorporated their secrets.

However, the difficulty for plaintiffs arises from the fact that there is simply no allegation nor evidence here suggesting that its trade secrets were disclosed to or used by these defendants. Plaintiffs' position turns exclusively upon the notion that "with knowledge [Steel City] imported motors made with the trade secret." DE 48 at 8. This concept—that trade secret misappropriation (as distinct from other causes of action) can be predicated entirely upon the knowing purchase of a product wrongfully made with a trade secret—appears inconsistent with existing case law. *Lehman v. Dow Jones & Co.*, 783 F.2d 285, 298 (2d Cir. 1986) ("[T]he information at issue here was not used to run Lehman's business but was its product: like the car that rolls off the production line, this information was what Lehman had to sell."); *Archie MD, Inc. v. Elsevier, Inc*., No. 16-CV-6614 (JSR), 2017 WL 3421167, at *12 (S.D.N.Y. Mar. 13, 2017) ("[P]roducts that Archie licensed and that were eventually distributed to consumers, do not constitute trade secrets.") (citing *Lehman*, 783 F.2d at 298); *Waterville Inv., Inc. v. Homeland Sec. Network (NV Corp.)*, No. 08-CV-3433 (JFB)(WDW), 2010 WL 2695287, at *4 (E.D.N.Y. July 2, 2010) (distinguishing trade secret disclosure from "a finished product displaying the

effects of [a trade secret] process"). Therefore, plaintiffs' trade secret claims fail, and summary judgment is warranted.

### 4. Tortious Interference

Defendants also seek summary judgment as to the tortious interference claims brought by plaintiffs.[6] Envirocare's motion is premised primarily upon a flawed factual demonstration. On its motion, defendants filed an affidavit from Mark Piepes, the owner/CEO of Desco Vacuum Cleaner Supply, one of Envirocare's customers, representing that Shihui had fabricated the m34 and m37 components exclusively using molds owned by Desco since 2007, long before the relevant period herein. DE 50-26 ¶ 7 ("Other than the molds that Desco paid for in 2007, there is no other proprietary tooling used to make the M34 and M37 vacuum cleaner parts."). In a stunning reversal—and a vivid demonstration of disputed material issues of fact—Piepes filed a subsequent affidavit stating that plaintiffs' tooling "is also used to make the M34 and M37 vacuum cleaner parts." DE 51-13 ¶ 5. Therefore, Envirocare's motion is without basis.

Steel City raises several legal arguments seeking summary judgment on the tortious interference claims. However, because it is now undisputed that Steel City acquired the components alleged in the complaint from plaintiffs, and there appears to be no suggestion that Steel City was involved in the procurement or sale of the m34, m37 or grey power cord components, Steel City is entitled to summary judgment as to the remaining claims.

---

[6] For avoidance of doubt, based on plaintiffs failure—notwithstanding substantial discovery—to identify parts improperly obtained other than the M34, M37 and grey power cord, the tortious interference claims are limited only to those components. Other than these three components, plaintiff has failed to articulate even an arguable basis for proceeding with respect to any other items. *See Scutti Enters., LLC. v. Park Place Entm't Corp.*, 322 F.3d 211, 217 (2d Cir. 2003) (citing *Nadel v. Play-by-Play Toys & Novelties, Inc.*, 208 F.3d 368, 382 (2d Cir. 2000)) ("[M]ere suspicions are inadequate to support a claim for tortious interference with business relations.").

### 5. *Plaintiffs' Application Pursuant to Rule 56(d)*

In response to the instant motions seeking summary judgment in both actions, plaintiffs offer little legal argument, other than a generalized invocation of Rule 56(d) suggesting that more discovery is required. As the Second Circuit has held:

> A party resisting summary judgment on the ground that it needs additional discovery in order to defeat the motion must submit an affidavit pursuant to Federal Rule of Civil Procedure 56(d) (formerly Rule 56(f)), showing: "'(1) what facts are sought and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts.'" *Meloff v. N.Y. Life Ins. Co.*, 51 F.3d 372, 375 (2d Cir. 1995) (quoting *Hudson River Sloop Clearwater, Inc. v. Dep't of Navy,* 891 F.2d 414, 422 (2d Cir. 1989)).

*Lunts v. Rochester City Sch. Dist.*, 515 F. App'x 11, 13 (2d Cir. 2013). The affidavit supplied complains that the production of documents from the customs broker was incomplete, but unconvincingly so. DE 51; *see Lego A/S v. Best-Lock Constr. Toys, Inc.*, No. 3:11-cv-01586 (CSH), 2017 WL 6540268, at *5 (D. Conn. Dec. 21, 2017) ("[T]he movant in a Rule 56(d) motion has the burden of convincing the Court that additional discovery is required.").[7] Furthermore, counsel's affidavit fails to satisfy any of the requisites of Rule 56(d). *See, e.g.*, *Alphonse Hotel Corp. v. Tran*, 828 F.3d 146, 151–52 (2d Cir. 2016) (affirming the denial of a Rule 56(d) motion where the movant "failed . . . to explain his basis for believing that [the] documents exist" and noting that "[s]uch bare generalized assertions cannot justify delaying the resolution of a summary judgment motion"); *Lunts*, 515 F. App'x at 13–14 ("[F]ailure to file a Rule 56(d) affidavit sufficiently explaining the need for additional discovery 'is itself sufficient

---

[7] For example, counsel suggests in his affidavit that the customs broker testified that he failed to include documents relating to a second Envirocare entity. DE 51 ¶ 11. Review of the cited portions of that deposition reveals that the representative testified affirmatively that he supplied all the relevant documents, and that his company "only dealt with one" Envirocare entity. DE 51 at 6-7.

17

grounds to reject a claim that the opportunity for discovery was inadequate.'" (quoting *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137 (2d Cir. 1994))); *Hoffmann v. Airquip Heating & Air Conditioning*, 480 F. App'x 110, 112 (2d Cir. 2012) (rejecting 56(d) application where "attorney's Rule 56(d) affidavit lacked any particularity as to how the facts sought would create an issue of material fact and made no attempt to explain the efforts Hoffmann made to obtain those facts during the time provided for discovery").

Plaintiffs' repeated reference to discovery being "limited" in the instant action constitutes a mischaracterization of the record. As the transcript of the June 15 conference demonstrates, discovery was not "limited" here, rather the Court devised a phased discovery plan in an effort to create some efficiencies for the benefit of the parties, prioritizing those matters which the parties—and most particularly the plaintiffs—identified as critical to the dispute. Plaintiffs' counsel focused on obtaining records from customs brokers, which he described as the "lynchpin" to the entire matter, and acknowledged that if those records did not support plaintiffs' theories, the cases would likely need to be withdrawn. The Court fully supported this effort, and plaintiffs not only obtained said documents, but also had the opportunity to depose at least one of the brokers. Belated complaints that these third party productions (which dovetail, in certain respects, with plaintiffs' own records) are somehow incomplete or insufficient are belied by the absence of any effort by plaintiffs to move to compel further compliance. Thus, Rule 56(d) does not provide a basis to overcome defendants' motions for summary judgment.

## CONCLUSION

Based on the foregoing:

1. The motion for summary judgment by Steel City is granted in all respects;

2. The motion for summary judgment by Envirocare is granted as to the patent and trade secret claims;

3. The motion for summary judgment by Envirocare as to the tortious interference claims is DENIED as to the following components: the m34, the m37 and the generic grey power cord; and

4. Defendants' motions for sanctions are denied.

Counsel for plaintiffs and Envirocare are directed to meet and confer to develop a mutually convenient scheduling order regarding discovery as to the limited remaining claims and the scheduling of trial and/or further dispositive motion practice. A stipulated schedule shall be submitted to the Court within ten days of this order. Furthermore, counsel are to confer concerning the effect of this decision, if any, upon the claims in *Imig v. Omi*, 16-CV-628 (GRB) and supply a status report within the same time frame.

Dated: Central Islip, New York
May 30, 2018

 /s/ Gary R. Brown
 GARY R. BROWN
 United States Magistrate Judge